GAZENA C. JONES, APPELLANT, *v.* ORVIS H. ZOLLER AND OTHERS, RESPONDENTS.

*When a husband may be said to have absented himself from his wife — when a second marriage by the wife is lawful — 2 R. S., 139, sec. 6 — what evidence is admissible to show intention on the part of the husband to absent himself.*

The words " absented himself," in section 6 of 2 Revised Statute, 139, providing that the marriage of any person whose husband shall have absented himself for the space of five successive years, shall only be void from the time that its nullity shall be pronounced by a court of competent jurisdiction, means a withdrawal of the husband from his wife, his relatives and the ordinary and usual opportunities of identification — such a withdrawal from his wife and family as would, after the lapse of five successive years, lead naturally to the inference that death had ensued.

The plaintiff and one Firth intermarried at Deer River in 1835. They then lived for three or four years in Troy and afterwards in Syracuse, where they were finally turned out of their house for non-payment of rent. Firth having failed to provide for his wife, she then left him, and provided for herself and two children, living first at a boarding-house in Syracuse, and afterwards with relatives at Pamelia, Deer Creek and Gouverneur, at which latter place she engaged in the millinery business.

Firth enlisted in 1861 and served about eighteen months; he visited his wife, when on a furlough, and stayed with her about four weeks, and again in the spring of 1863 or 1864, when he left the army; when he left the army he wanted his wife to come and live with him in Syracuse; she at first consented, and then refused by the advice of her friends; she did not see him from that time until after she had married one Jones in 1875. Firth sent his wife money on two occasions, once before and the second time just after he left the army.

After his wife refused to live with him, Firth went to Pithole, in the oil regions, stayed there about eighteen months, and then returned to Syracuse, where he worked a while, and in 1865 went to Cardiff, a small place twelve miles from

Syracuse, where he lived till after his wife married Jones. He worked in different families, and finally took a housekeeper, with whom he cohabited and, it was said, intermarried.

*Held*, that Firth had absented himself from his wife within the meaning of the statute.

Upon the trial of the action the plaintiff offered to show that a marriage ceremony had been performed between Firth and his housekeeper.

*Held*, that the evidence should have been received, as it bore directly upon the question whether his change of residence from Syracuse to Cardiff was made with the intention of absenting himself from his family.

APPEAL from a judgment, entered on a verdict rendered at the Jefferson Circuit, and from an order denying a motion for a new trial on the minutes.

This action has already been before the General Term; its decision on the former appeal being reported in 29 Hun, 551.

*Elon R. Brown*, for the appellant.

*O'Brien & Emerson*, for Zoller, respondent.

*Porter & Watts*, for other respondents.

SMITH, P. J.:

The action is to recover dower in a farm of about fifty acres, the property of James Jones, deceased, with whom the plaintiff intermarried on 12th October, 1875. The only defense brought up by this appeal is that the plaintiff had a former husband, John Firth, who was living at the time of her marriage with Jones. At the trial the plaintiff attempted to bring her case within the statute (2 R. S., 139, § 6), which provides as follows : " If any person whose husband or wife shall have absented himself or herself for the space of five successive years without being known to such person to be living during that time, shall marry during the lifetime of such absent husband or wife, the marriage shall be void only from the time that its nullity shall be pronounced by a court of competent authority." She gave evidence tending to show that Firth had absented himself from her for more than ten years, next preceding her marriage with Jones, and that during that period she did not know that Firth was living. At the close of the evidence the

learned judge who presided at the trial submitted to the jury for their decision the following questions, to wit:

"*First.* Did John Firth, the first husband of the plaintiff, absent himself for the space of five successive years prior to her marriage to James Jones within the meaning of the statute on the subject?"

"*Second.* Was said John Firth known to the plaintiff to be living during the period of five years immediately preceding her marriage to James Jones?"

The jury answered each of the questions in the negative. In other words, they found that the plaintiff, for five years immediately preceding her marriage to Jones, did not know that Firth was living, and yet that he had not absented himself all that period. And upon those findings the judgment for the defendant rests.

The respondent's counsel, in his points, anticipates the objection that the findings are inconsistent with each other, and suggests a mode of reconciling them, which may be put in the form of the following propositions: (1.) The plaintiff was not aware of the whereabouts of Firth, because she neglected to inquire, and avoided all means of information on the subject, and that being the case, the jury found that she was not aware of the fact that Firth was alive. (2.) Firth did not absent himself from his wife, but she left him, and remained away from him.

The first proposition imputes bad faith to the plaintiff, and an omission to inquire when she might have inquired, and by so doing might have learned her husband's whereabouts. That position is in conflict with the verdict of the jury. They were instructed by the court, in accordance with the request of the defendant's counsel, that the plaintiff must have acted in good faith, and that good faith could not exist on her part unless she exercised proper and due diligence in ascertaining whether or not Firth was dead. Under that instruction, there being very persuasive evidence that the plaintiff acted in good faith, the verdict that the plaintiff did not know that Firth was living necessarily negatived the charge that she acted in bad faith or was negligent, and that fact disposes of the first proposition. So far, the case stands thus: For about ten years next preceding the plaintiff's marriage with Jones, as the evidence shows without dispute, Firth and the plaintiff did not live together, and were absent each from the other. During all that

period, as the jury have found, the plaintiff was ignorant of his whereabouts, and after that lapse of time, she married Jones, believing in good faith that Firth was not living.

Did the plaintiff absent herself from Firth, or to state the matter in another way, is the verdict that Firth did not absent himself, warranted by the evidence? Upon the former appeal, Mr. Justice HARDIN, who delivered the opinion of the court, interpreted the words " absented himself," as used in the statute, to mean a withdrawal of the husband's whereabouts from his wife, his relatives, and the ordinary and usual opportunities of identification, such a withdrawal from his wife and family as would, after the lapse of five successive years lead naturally to the inference that death had ensued. That rule was followed and adopted by the trial judge in his charge to the jury, and by the application of it to the evidence the question now under consideration is to be determined.

The plaintiff and Firth were married in 1835, at Deer river, Lewis county. The plaintiff testified that they lived at Troy three or four years after their marriage, and then Firth went to New York city, and his wife to her relatives at Pamelia Four Corners, with whom she lived five or six months. Next they lived together and kept house in Syracuse, some four months, at the end of which time, as the plaintiff testified, Firth failed to provide for his wife. They were set out of doors by their landlord for non-payment of rent, and she left him on account of his dissipated habits and went to a boarding-house, her husband not paying her board. Firth remained about the city until December, 1861, when he enlisted in the army, where he remained about eighteen months. Shortly before he enlisted, his wife went to her relatives and lived with them, at Pamelia, Deer Creek and Gouverneur about a year and a half. At the latter place she engaged in the millinery business. She had with her the two children of her marriage with Firth, whom she supported. While she was at Gouverneur, Firth sent her once $100. He visited her there once for four weeks when he was on a furlough. They corresponded together frequently while she was there and he in the army, and in the spring of 1863 or 1864, after he left the army, he visited her there for two weeks, and asked her to go and live with him. And about that time she was in Syracuse on business, and Firth let her have fifty dollars to aid

her in her business at Gouverneur. She did not see him again until after her marriage with Jones in 1875.

Firth testified, in substance, that he and his wife moved from Troy to Syracuse in 1858; that he had resided in Syracuse and vicinity ever since; that in 1863 or 1864, after he let her have the fifty dollars to aid her in her business, she wrote him that she had made up her mind to come and live with him; that he then spoke for a house to rent, and soon after received another letter from her saying she declined to come through the advice of friends. That he then went to Pithole, in the oil regions; was there eighteen months; returned to Syracuse; worked there part of the summer, and in 1865 went to Cardiff, a small place twelve miles from Syracuse, where he lived till after the plaintiff was married to Jones. He testified that the first two or three years of his stay there, he lived in the families of different persons for whom he worked, and that in 1868, a Mrs. Shepardson became his housekeeper, and they lived together six or seven years, till she died. For the purpose of the discussion it may be assumed that he married Mrs. Shepardson, as the plaintiff offered to prove that fact, and it was excluded on the defendant's objection that it was immaterial and incompetent.

It will be observed that while each of these witnesses states some facts that the other does not, there is no substantial contradiction between them, and the facts upon which the present question is to be decided are undisputed. The position of the defendant's counsel seems to be that as the wife left the place of residence and domicile of her husband, she absented herself from him. It may be true that until Firth went to Cardiff to live he had a legal residence in Syracuse, but his removal to Cardiff was a change of residence. And from the time when he and his wife were turned into the street until the final correspondence that passed between them, he did not provide, or offer to provide, a home for his family. On the contrary, he acquiesced in their living at Gouverneur, as is shown by his visits to his wife there, and his remittances of money to aid her in the business she was carrying on at that place.

Now, whether or not the plaintiff violated her conjugal duty in refusing to return to Syracuse and live with her husband is not in question here. But if Firth, stung by her refusal or from any other motive, then resolved to abandon his former residence and keep her

in ignorance of his whereabouts, and succeeded in doing so until she married Jones, the fact of his "absenting himself," within the meaning of the statute, is established. It seems to us that very cogent proof of his absenting himself from his wife and family is found in the fact of his speedy departure to an adjoining state after the receipt of the letter from his wife; his remaining there a year and a-half; his removal to an obscure hamlet after a brief return to Syracuse; his living in the families of his various employers; his marrying and cohabiting for years with a woman other than his wife; and his withholding from his wife and children all information as to his whereabouts in the meantime. It is immaterial that his new place of residence was within a dozen miles of the old one. So long as his new place of residence was unknown to his wife, and he refrained from acquainting her with it, he "absented himself" as effectually as if he had gone to a distant country without her knowledge.

The irresistible conclusion is that the verdict that Firth did not absent himself is against the clear weight of the evidence, and this has led to inconsistent findings. He did take himself away and keep himself away for more than five years, and, as the jury have found, his wife, without any omission on her part, was ignorant of his whereabouts, and actually believed him dead, and yet they have reached a conclusion that stamps her subsequent marriage as adulterous.

We are also of the opinion that the exclusion of the offer to prove that a ceremony of marriage was performed between Firth and a woman other than his wife was error. The fact bore directly upon the question whether his change of residence was with the intention of absenting himself from his family. It tended significantly to show that he not only intended to repudiate all the obligations which he owed to his wife and children, but also to withhold from them all knowledge of his whereabouts.

The judgment and order should be reversed, and a new trial ordered, costs to abide the event.

HARDIN and BARKER, JJ., concurred.

So ordered.